UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| FRANCO FARIVAR, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DENNIS LEDBETTER, individually and in ) | No. 3:10-cv-462 |
| his official capacity as Morgan County Sheriff; ) | (Phillips) |
| LARRY LAWSON, individually and in his ) | |
| official capacity; RICK HAMBY, individually ) | |
| and in his official capacity; ) | |
| MORGAN CNTY. SHERIFF'S DEPT.; and ) | |
| MORGAN CNTY., TENN., ) | |
| Defendants. ) | |

## ORDER

### I.     Introduction

This matter comes before the Court on Defendants' Motion for Summary Judgment. [Doc. 12.] For the reasons contained herein, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

### II.    Statement of the Facts

Plaintiff Franco Farivar is a citizen and resident of Morgan County, Tennessee. Dennis Ledbetter is the former sheriff of Morgan County, Tennessee. Larry Lawson and Rick Hamby were sheriff's deputies for Morgan County Sheriff's Department at all times relevant to this action.

This case concerns the events surrounding Plaintiff's arrest for domestic assault upon his wife on October 31, 2009. In the early morning hours of that day, Plaintiff contacted the Morgan

County Sheriff's Department to report that his wife was missing. Plaintiff stated that he was concerned because his wife was diabetic and had been involved in several automobile accidents in the past. The Morgan County Sheriff's Department told Plaintiff that they were unable to dispatch an officer at that time, but that no report of automobile accidents had been received that day. Plaintiff called again later that morning, and at approximately 10:30 a.m., Officer Lawson arrived at Plaintiff's residence. Plaintiff told Lawson that he had located his wife's vehicle at a neighbor's home and that she apparently had spent the night there. Lawson drove to the location specified by Plaintiff, and interviewed Plaintiff's wife, who explained that she left a message for her husband regarding her plans, but had not spoken directly to him. Lawson left.

Plaintiff states that when his wife returned home, she was upset that Plaintiff had called the sheriff's department and that Lawson had come looking for her. Plaintiff reports that he and his wife had a "brief verbal argument," and Plaintiff left the residence. At 1:35 p.m., Plaintiff's wife called 9-1-1 to report a domestic disturbance. The 9-1-1 operator's record of the call reads: "SHE WAS SO UPSET AND SCREAMING / I COULD NOT UNDERSTAND HER I TRIED TO GET HER TO CALM DOWN AND SHE WOULD NOT / SHE WAS SCREAMING HE TRIED TO REPORT ME MISSING SHE WAS SAYING STUFF ABOUT HIM / HITTING HER SHE SAID HE HAD BRUISE [sp] SHE SAID DAYS AGO HE HURT HER HE PUSHED HER DOWN AND TWISTED HER WRIST . . . ." [Doc. 13, Attach. 4.] Meanwhile, Plaintiff also called the Sheriff's Department to ask what to do. Officer Lawson met Plaintiff at a nearby store and told Plaintiff to return home to await Lawson's arrival with a second patrol car. Plaintiff drove home, but parked approximately 300 to 400 feet from the house and remained in his vehicle.

Officers Hamby and Lawson arrived at Plaintiff's house at 1:59 p.m. Plaintiff states that Lawson stayed outside to talk to Plaintiff, while Hamby went into the house to speak with Plaintiff's wife. Lawson reports that while at the house he observed red marks on Plaintiff's wife's neck, as well as bruising on her forearms. Hamby also reports seeing red marks on Plaintiff's wife's neck. However, Plaintiff states that his wife did not have red marks on her neck or on her right forearm, and that she explained to Hamby that the bruises on her left forearm were caused by her daily diabetes blood tests. Plaintiff states that his wife never reported to Officers Hamby or Lawson that Plaintiff injured her or threatened her in any way. Plaintiff claims that Hamby informed Plaintiff's wife that if she wanted Plaintiff to leave the residence she would need to sign a statement and come to the jail to sign a warrant. Plaintiff's wife reportedly refused to come to jail. Lawson arrested Farivar for the alleged commission of domestic assault, and Plaintiff's wife signed a statement reading: "Abuse - physical, verbal, mental - Physical - push-down hurt me - starts the verbal abuse." [Doc. 13, Attach. 3, at 4.] The officers took Plaintiff to the station, and Plaintiff remained in jail for 13 hours. After posting bond, he was required to remain away from his home and his wife until the charges were dismissed two weeks later, on November 12, 2009.

### III.    Statement of the Case

On November 1, 2010, Plaintiff Franco Farivar brought suit in this Court, alleging that Defendants Lawson and Hamby are liable under 42 U.S.C. § 1983 and Tenn. Code Ann. § 29-20-101 to -407, for violations of his civil rights, false arrest, false imprisonment, and malicious prosecution. He claims that Defendant Ledbetter failed to adequately train and supervise Lawson and Hamby, that Ledbetter and Defendant Morgan County, Tennessee, adopted and implemented policies, customs, or practices that facilitated the alleged torts, and that Morgan County and

-3-

Defendant Morgan County Sheriff's Department are liable for the officers' actions under the doctrine of *respondeat superior* and pursuant to the Governmental Torts Liability Act and Tenn. Code Ann. § 8-8-302. Plaintiff prays for compensatory damages in the amount of $100,000.00, punitive damages in the amount of $300,000.00, and costs and attorney fees.

In their Motion for Summary Judgment filed on September 9, 2011, Defendants contend that (1) Morgan County Sheriff's Department is not an entity subject to suit; (2) Dennis Ledbetter is immune from Plaintiff's state law claims under Tenn. Code Ann. § 8-8-301; (3) Plaintiff's claims against Ledbetter, Lawson, and Hamby in their official capacities are improper and duplicative in as much as they equate to claims against Morgan County; (4) Plaintiff's claims against Morgan County under 42 U.S.C. § 1983 fail as a matter of law since *respondeat superior* is not a proper basis of liability under § 1983; (5) Plaintiff's claims for false arrest and false imprisonment fail because Plaintiff's arrest was supported by probable cause; (6) Plaintiff's claim for malicious prosecution fails because the officers did not prosecute Plaintiff and there is no evidence that they misled or provided false information to the prosecutor; (7) Morgan County is entitled to governmental immunity for Plaintiff's claims of false arrest, false imprisonment, malicious prosecution, and civil rights violation; (8) Plaintiff's claims against Ledbetter, Lawson, and Hamby in their individual capacities fail as a matter of law because they are entitled to qualified immunity; and (9) Plaintiff's claims for failure to train or inadequate training fail as a matter of law because there is no evidence that Morgan County was deliberately indifferent to the constitutional rights of Plaintiff or other citizens of Morgan County.

In his response to Defendants' Motion for Summary Judgment, Plaintiff concedes that the Morgan County Sheriff's Department is not an entity subject to suit; states that he does not

seek to impose liability via the state claims upon Ledbetter; concedes that the "official capacity" designations are duplicative and that such claims are in reality claims against Morgan County; and concedes that Defendants' position as to sovereign immunity is correct. However, he maintains that Defendants are not entitled to summary judgment on ground (4), *supra*, because respondent superior is not the theory advanced by Plaintiff to impose liability against Morgan County; on ground (5) because Plaintiff's arrest was not supported by probable cause; on ground (6) because the purported arrest issued by Hamby's instructions and Lawson's acts are sufficient to provide the basis of a malicious prosecution claim; and on ground (8) because Dennis Ledbetter, Lawson, and Hamby are not entitled to qualified immunity. Plaintiff's response does not address his cause of action for failure to train or inadequate training. Plaintiff also avers that the discovery provided by Defendants is inadequate to allow an adequate record upon which to base summary judgment at this time.

## IV.     Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In considering a motion for summary judgment, a district court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The duty of the court is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

-5-

Case 3:10-cv-00462-TWP-CCS   Document 21   Filed 07/02/12   Page 5 of 15   PageID #: 114

"[N]ot just any alleged factual dispute between the parties will defeat an otherwise properly supported motion for summary judgment; the dispute must present a *genuine* issue of *material* fact." *Rhodes v. Pittard*, No. 11-5575, 2012 WL 2302266, at *1 (6th Cir. June 19, 2012) (citing *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389 (6th Cir. 2008)) (emphasis in original). "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Id.* (citing *Niemi v. NHK Spring Co., Ltd.*, 543 F.3d 294, 298 (6th Cir. 2008)). "A factual dispute concerns a 'material' fact only if its resolution might affect the outcome of the suit under the governing substantive law." *Id.* (citing *Niemi*, 543 F.3d at 298-99).

## V. Analysis

### A. Defendant Morgan County Sheriff's Department

The Court agrees with the parties that Defendant Morgan County Sheriff's Department is not an entity subject to suit. *See Jones v. Union Cnty.*, 296 F.3d 417, 421 (6th Cir. 2002). Defendants' motion to dismiss Defendant Morgan County Sheriff's Department from this case will be granted.

### B. Duplicative Claims

The Court agrees with the parties that the "official capacity" designations against Defendants Ledbetter, Lawson, and Hamby are duplicative and are in reality claims against Defendant Morgan County, Tennessee. *See, e.g.*, *Alkire v. Irbin*, 330 F.3d 802, 810 (6th Cir. 2003) (collecting case law); *Ramos-Macario v. Jones*, No. 3:10-00813, 2011 WL 831678, at *9 (M.D. Tenn. Mar. 2, 2011) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all

-6-

Case 3:10-cv-00462-TWP-CCS   Document 21   Filed 07/02/12   Page 6 of 15   PageID #: 115

respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.") (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)). Defendants' motion to dismiss Plaintiff's claims against Defendants Ledbetter, Lawson, and Hamby in their official capacities will be granted.

### C. Liability of Defendant Morgan County, Tennessee

The Court finds that Defendant Morgan County, Tennessee, is not liable under Tenn. Code Ann. § 29-20-205(2) or 42 U.S.C. § 1983, and therefore Defendants' motion for summary judgment on all claims against Defendant Morgan County, Tennessee will be granted.

#### 1. Under the Governmental Tort Liability Act

Tenn. Code Ann. § 29-20-205(2) provides, "Immunity from suit of all government entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of: . . . (2) false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, . . . , or civil rights; . . . ." The parties agree that, pursuant to this statute, Defendant Morgan County, Tennessee is immune from Plaintiff's claims for false arrest, false imprisonment, malicious prosecution, and violation of civil rights under Tenn. Code Ann. § 29-20-205(2). Accordingly Defendants' motion to dismiss the state claims against Morgan County, Tennessee, will be granted.

#### 2. Under 42 U.S.C. § 1983

Plaintiff's Complaint states that Defendant Morgan County, Tennessee "implicitly or explicitly adopted and implemented careless and reckless policies, customs or practices that included among other things of allowing officers to recklessly obtain arrest warrants without probable cause and in so doing unlawfully arrest them." [Doc. 1, ¶ 19.] He further avers that

-7-

Defendant Ledbetter, in his official capacity as sheriff of Morgan County, Tennessee, "failed to adequately train and supervise Defendants Lawson and Hamby which amounts to deliberate indifference to Plaintiff Farivar['s] civil rights." *Id.* ¶ 20. And Plaintiff states several times that Morgan County, Tennessee is liable under "the doctrine of *respondeat superior* and pursuant to the Governmental Torts Liability Act." *Id.* ¶¶ 24, 27, 36.

"[M]unicipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, 'that is, acts which the municipality has officially sanctioned or ordered.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (quoting *Pembair v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). "Although a municipality may be a 'person' subject to suit under § 1983, it is well established that § 1983 claims against a municipality cannot be based on a *respondeat superior* theory of liability." *Rivers v. Scott*, No. 3:12-cv-562, 2012 WL 2367167, at *4 (M.D. Tenn. June 21, 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). To the extent that Plaintiff's Complaint can be read to assert *respondeat superior* or vicarious liability as the basis for liability under § 1983, Defendant Morgan County, Tennessee, is immune from such liability as a matter of law.

Thus, Defendant Morgan County, Tennessee's liability to Plaintiff under § 1983 depends upon Plaintiff's showing of a direct causal link between the alleged constitutional violation and an official policy or custom adopted by the official makers of the policy with "deliberate indifference" toward the constitutional rights of persons affected by the policy or custom. *City of Canton v. Harris*, 489 U.S. 378, 387-88 (1989). The Sixth Circuit has held that to establish such a causal link, a plaintiff must "identify the policy, connect the policy to the [county] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis*

*Police Dep't*, 8 F.3d 358, 363-64 (1993) (citing *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)). The custom or policy must be "the moving force behind the deprivation of the plaintiff's rights." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010).

"[T]he finding of a custom or policy is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). A municipal policy can be an "ordinance, regulation or decision officially adopted and promulgated by that [municipality's] officers." *Monell*, 436 U.S. at 690. Alternatively, a custom is a practice that "has not received formal approval through . . . official decisionmaking channels" but rather one "that policymaking officials knew about and acquiesced in." *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (quoting *Monell*, 436 U.S. at 690-91). For purposes of municipal liability, a custom must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Porter v. City of Columbus Div. of Police*, 395 Fed. App'x 197, 203-04 (6th Cir. 2010) (citing *Monell*, 436 U.S. at 691).

A failure to train, or inadequate training, or a failure to supervise, police officers "will support a claim of municipal liability under § 1983, but 'only where the failure to train [or supervise] amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Ward v. Sill*, No. 2:10-cv-7, 2012 WL 37518, at *13 (E.D. Tenn. Jan. 9, 2012) (citing *City of Canton*, 489 U.S. at 378). To establish deliberate indifference, a plaintiff must show either (1) "prior instances of unconstitutional conduct demonstrating that [the municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury," or (2) "a simple violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious

potential for such a violation . . . ." *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008). The Supreme Court has recently warned that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," and so "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011).

There is no evidence in the record to support Plaintiff's conclusory allegation that Defendant Ledbetter failed to supervise or train Defendants Lawson or Harris, and Plaintiff never alleged in his complaint that any such failure by Defendant Ledbetter reflected a "well established" policy or custom of Defendant Morgan County, Tennessee. While his sworn affidavit contains several allegations about his past interactions with Defendants Lawson and Hamby, Plaintiff did not suggest that Defendant Morgan County, Tennessee, had a history of abuse or prior instances of unconstitutional conduct by county police officers, much less a pattern of constitutional violations. Plaintiff also introduced no evidence that Defendant Ledbetter specifically failed to train his officers "to handle recurring situations presenting an obvious potential" for constitutional violations like that allegedly sustained by Plaintiff. *See Plinton*, 540 F.3d at 464. And without any evidence regarding specific policies or customs or prior instances of constitutional violations, the Court finds Plaintiff's allegation regarding the county's policy of "allowing officers to recklessly obtain search warrants" too vague to subject the municipality to liability. *See Powers*, 501 F.3d at 607. Finally, Plaintiff failed to present any evidence establishing causation between any such policies or customs and the alleged constitutional violation, much less than such policies or customs were the "moving force" behind the Plaintiff's alleged injury. The lack of such a direct causal connection is palpable in Plaintiff's Response to Defendants' Motion for Summary Judgment, wherein he states that his only

claim against Morgan County, Tennessee, is that its "customs and policies . . . allowed the violation to occur." [Doc. 18, § 2.]

For the foregoing reasons, the Court concludes that there is no genuine issue of material fact as to Defendant Morgan County's liability under 42 U.S.C. § 1983. Defendants' motion to dismiss the federal claims against Morgan County will be granted.

### D. Liability of Defendant Dennis Ledbetter

The Court finds that Defendant Dennis Ledbetter is not liable under Tenn. Code Ann. § 29-20-205(2) or 42 U.S.C. § 1983, and therefore Defendants' motion for summary judgment on all claims against Defendant Ledbetter will be granted.

#### 1. Under the Governmental Tort Liability Act

Tenn. Code Ann. § 8-8-301 provides, "No sheriff, whether elected or appointed, nor any surety on the sheriff's bonds, shall be liable for any wrongs, injuries, losses, damages, or expenses incurred as a result of any act or failure to act on the part of any deputy appointed by the sheriff, whether the deputy is acting by virtue of office, under color of office, or otherwise." Plaintiff states that his Complaint does not seek to impose liability against Defendant Ledbetter for Plaintiff's state law claims. To the extent that the Complaint could be interpreted to allege such liability, Defendants' motion to dismiss all state law claims against Dennis Ledbetter will be granted.

#### 2. Under 42 U.S.C. § 1983

Plaintiff's Complaint contains a single allegation against Defendant Dennis Ledbetter: that "in his capacity as former Sheriff of Morgan County, and individually, [he] failed to adequately train and supervise Defendants Lawson and Hamby which amounts to deliberate indifference Plaintiff Farivar['s] civil rights." [Doc. 1, ¶ 20.]

-11-

As explained *supra*, supervisory liability may not be imposed pursuant to 42 U.S.C. § 1983 based on the doctrine of *respondeat superior*. Instead, "[a] supervisor is not liable under § 1983 for failing to train unless the supervisor 'either encouraged the specific incident or misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982)). Thus, "[s]upervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act," *Walters v. Stafford*, 317 Fed. App'x 479, 486 (6th Cir. 2009); a plaintiff must point to specific "active unconstitutional behavior" by the supervisor:

> [T]o establish supervisory liability, it is not enough to point after the fact to a particular sort of training which, if provided, might have prevented the harm suffered in a given case. Rather, such liability attaches only if a constitutional violation is 'part of a pattern' of misconduct, or 'where there is essentially a complete failure to train the police force, or training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to occur. Only in such circumstances can it be said that a supervisor's liability rests upon 'active unconstitutional behavior,' as opposed to 'a mere failure to act.'

*See Ontha v. Rutherford Cnty.*, 222 Fed. App'x 498, 503-05 (6th Cir. 2007); *see also Walters*, 317 Fed. App'x at 486 ("A plaintiff must show that a supervising officer 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

The Court also notes that the Sixth Circuit has warned that, "absent evidence of personal involvement in the underlying misconduct," general failure to train claims against individual defendants in their individual capacities "are properly deemed brought against them in

-12-

their official capacities, to be treated as claims against the county." *Harvey v. Campbell Cnty., Tenn.*, 453 Fed. App'x 557, 563 (6th Cir. 2011) (quoting *Miller v. Calhoun Cnty.*, 409 F.3d 803, 817 n.3 (6th Cir. 2005)); *see also Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 846 (E.D. Tenn. Aug. 10, 2011) ("Absent personal involvement in the underlying unconstitutional act, the attempt to hold "[municipal supervisors] liable in their individual capacities for their alleged failure to adequately train employees . . . 'improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability.'") (citing *Harvey*, 453 Fed. App'x at 563). Sheriff Ledbetter's liability under § 1983 "must be assessed individually based on his own actions." *Graham v. Sequatchie Cnty. Gov't*, No. 1:10-cv-20, 2011 WL 1305961, *26 (E.D. Tenn. Apr. 4, 2011) (citations omitted).

In this case, there is no evidence that Sheriff Ledbetter was personally involved in or authorized the alleged unlawful arrest and constitutional violations, or that he had a history of involvement with or encouragement of constitutional violations. Plaintiff cannot rest on the mere allegation in his Complaint that Ledbetter "failed to adequately train and supervise . . . which amounts to deliberate indifference . . . "; rather, Plaintiff is *at a minimum* required to prove that Ledbetter implicitly authorized, approved, or knowingly acquiesced in Plaintiff's allegedly unlawful arrest. *Graham*, 2011 WL 1305961, at *26 (citations omitted). Not only does Plaintiff fail to provide the Court with any details about Ledbetter's training or supervision of deputies, but Plaintiff's Complaint does not include a single factual allegation about Ledbetter, and Plaintiff's Response to Defendants' Motion for Summary Judgment or affidavit in support thereof does not make mention of Ledbetter. The Court finds that Plaintiff failed to make out a viable claim of supervisory liability against Defendant Ledbetter under 42 U.S.C. § 1983, and accordingly Defendants' motion to dismiss all claims against Ledbetter will be granted.

### E. Civil Rights Violations, False Arrest, False Imprisonment, Malicious Prosecution, and Qualified Immunity

The Court finds insufficient evidence in the record to grant summary judgment to Defendant on the remainder of Plaintiff's claims. Plaintiff states that there were no red marks on his wife's neck and that his wife explained to the officers that the bruising on her left arm was caused by her daily diabetes blood tests. Plaintiff points to the fact that, despite Defendant Lawson's testimony that he observed bruising on Plaintiff's wife's neck and on both of her forearms, in the Arrest Report, Defendant Lawson only reports "bruises to her left arm." [Doc. 13, Attach. 3, at 2.] Plaintiff avers that his wife never complained to Defendants Lawson or Hamby that Plaintiff had injured her or threatened her in any way, and that Defendant Hamby prepared her written statement with knowledge of the falsity of the statements therein. And as noted by Plaintiff, the written statement produced by Defendants and signed by Plaintiff's wife does not identify Plaintiff or describe with any specificity the nature, type, or location of the purported "physical, verbal, mental" abuse. Finally, Plaintiff states that his arrest was "never validated by a probable cause determination made by a magistrate or neutral and detached Clerk as contemplated by Tennessee law." Indeed, the signature blocks for Defendant Lawson and the magistrate judge or Clerk are left blank on the copy of the Arrest Warrant provided to the Court. Accordingly, the Court finds that whether Defendants Lawson and Hamby had probable cause to arrest Plaintiff remains a genuine issue of material fact.

## VI. Conclusion

For the reasons contained herein, Defendants' Motion for Summary Judgment [Doc. 12] is **GRANTED IN PART**, whereby the Court grants summary judgment in favor of Defendant on Plaintiff's federal and state claims against Defendants Morgan County Sheriff's Department,

Defendant Ledbetter, and Defendant Morgan County, Tennessee, and on Plaintiff's federal and state claims against Defendants Hamby and Lawson in their official capacities. Defendants' motion is **DENIED** as to Plaintiff's federal and state claims against Defendants Lawson and Hamby and as to the question of said Defendants' entitlement to qualified immunity.

**IT IS SO ORDERED**.

**ENTER:**

s/ Thomas W. Phillips
United States District Judge